No. 5492.

WILLIAM O'NEILL VS. THE CITY OF NEW ORLEANS.

The City of New Orleans is obliged to keep its streets, sidewalks, and bridges repaired, and if on account of its neglectful delay in making a needed repair a person suffers an injury, to which he has not contributed by any fault of his own, the City will be liable in damages for the injury.

APPEAL from the Superior District Court, parish of Orleans.   *Hawkins*, J.   Trial by jury.

*Chas. S. Rice* for plaintiff and appellee.

*B. F. Jonas*, City Attorney, for defendant.

The opinion of the court was delivered by

DEBLANC, J.   On the 18th of May 1872, while crossing from Magazine to Canal street, plaintiff stepped upon a flag-stone destined to span the gutter at the junction of those streets, one end of which was then laying in said gutter.   He then and there slipped, fell with violence, broke his

right leg over the knee, and—on that account—was out of employment for the space of seventeen months.

He brought suit against the city, charges that the injury he has sustained was the immediate result of its neglect to perform a prescribed, an absolute duty, and claims against it, as damages, the sum of ten thousand dollars. The city, after a general denial, specially denied that it had knowledge or notice of the bad condition of the crossing on Magazine street, or that it neglected to repair the same.

Long before the accident, the flag-stone on which plaintiff slipped and fell, and on which—on the same day and before—others had slipped and fallen, had often been knocked out of place by drays and floats, and merely replaced, but never fastened over the gutter, except once, and then by driving a wooden pin on one side of the stone.

Not disposed to encourage any speculative litigation against the city, we have examined with care the evidence adduced on the trial. Not one of the witnesses who testified on that occasion, not even plaintiff, has attempted to exaggerate any of the facts related by them. That evidence establishes that, when the accident happened, plaintiff was sober, walking without haste, on his way to his home, and that he in no manner contributed to said accident.

The city's counsel contends that its authorities and employees can not ever be on hand to repair breakages. That, besides, this accident occurred in the broad day, that plaintiff was guilty of carelessness, of contributive negligence, and that the judgment of the lower court which allows him one thousand dollars, should—with the verdict on which it is based, be avoided and reversed.

By the twenty-sixth section of its charter, the city of New Orleans is bound to keep in repair its paved and unpaved streets, and—though not an insurer against accidents, the city is liable for those injuries which result from its neglect to maintain—in a safe condition—the sidewalks and bridges within its limits.

Dillon, on Municipal Corporations, sec. 789.

" It is the almost uniform doctrine of the courts, that municipal corporations are also liable when the wrong resulting in an injury to others, consists in a *mere neglect* or omission to perform an *absolute and perfect*, as distinguished from a discretionary, or imperfect corporate duty, or for the want of proper care of its officers or servants acting under its direction or authority in the execution of a prescribed duty."

Dillon, Municipal Corporation, sec. 778.

If an accident were to happen by the displacement of a flag-stone spanning a gutter, and before the city, in the discharge of an absolute duty, could have ascertained the condition of the crossing and have it repaired, it is clear that the city could not be held liable ; but the fact of

such a displacement can and must be ascertained within a reasonable delay, within that delay which—according to circumstances—should be allowed to those who have the exclusive control of the streets of a city. In this instance, the flag-stone was, several times, raised from and placed over the gutter, without fastening it, by the neighbors and by the employees of the city.

That plaintiff might have avoided the accident, we admit—but how? By presuming that—on his route—there was some where a bridgeless gutter, by following another route, or by taking a cab or the cars. As well said in Hunt v. Pounal, 9th Verm., "In every case of damage occurring in the highway, we could suppose a state of circumstances in which the injury would not have occurred. If the team had not been too young, or restive, or old, or too headstrong, or the harness had not been defective or the carriage insufficient, no loss would have intervened. It is against these constantly occurring accidents that towns are required to guard in building highways. The traveler is not bound to see to it that his carriage is always perfect, and his team of the most manageable character and in the most perfect training, before he ventures on the highway. If the plaintiff is in the exercise of ordinary care and prudence, and the injury is attributable to the insufficiency of the road, conspiring with some accidental cause, the defendants were liable."

The court said, in the case of the city of Joliet v. Verley : "travelers have a right in passing along such a place—a passage way to a bridge—to have at least a secure footing, and it was the duty of the city to provide one. Loose planks, so warped that a traveler can not step upon them without dangerous oscillation, may—in the opinion of witnesses—make a safe walk over such a place, but they do not furnish a walk having that degree of safety which the law requires. Sidewalks are to be used by common people, and only a few of them are expected to possess the skill of a Blondin."

35 Ill. p. 65.

"Where the loss is the combined result of an accident and of a defect in the road, and the damage would not have been sustained but for the defect, although the primary cause be a pure accident ; yet, if there be no fault or negligence of the plaintiff, if the accident be one which common prudence and sagacity could not have foreseen and provided against, the town is liable."

Palmer v. Andover, 2d Cush. 600.

In this case, the defect which caused the accident was often seen by and well known to some of those employed by the city to repair its streets, and—nevertheless—the crossing on Magazine street never was repaired. The flag-stone remained in that condition, a trap to the unsuspecting traveler, and—so far as we are informed, from the very

first day on which it was knocked out of place until the accident happened.

The city is evidently liable in damages.

Both parties complain of the jury's verdict ; defendant prays that it be annulled—plaintiff, that the amount allowed him be increased. The facts and the law justify the jurors' verdict and the decree appealed from.

That decree is affirmed with costs.