(79 South. 405)

No. 21569.

BURKE v. WERLEIN et al.

(June 29, 1918.)

*(Syllabus by the Court.)*

1. MASTER AND SERVANT ⬤⟶317—MUNICIPAL CORPORATIONS ⬤⟶783 — EXCAVATION IN SIDEWALK—PERSONAL INJURY — LIABILITY OF OWNER—NUISANCE.

An excavation in a public sidewalk is intrinsically dangerous, and is a nuisance, and one who causes it to be made owes an absolute duty to protect the public from injury that may result therefrom, and cannot escape liability for such injury by showing that the excavation was made by a person who, though engaged by him so to do, acted as an independent contractor.

2. PRINCIPAL AND AGENT ⬤⟶159(2) — TORTS OF AGENT—LIABILITY.

An agent is liable for his own torts in like manner as other persons; his liability being neither increased nor decreased by the fact of his agency.

*(Additional Syllabus by Editorial Staff.)*

3. DAMAGES ⬤⟶131(2)—PERSONAL INJURY — AMOUNT.

Where injury to plaintiff's foot was not permanent, and his physical suffering was not continuous or of long duration at any time, and his detention from business was slight, and he suffered no pecuniary loss, a verdict of $750 was adequate.

O'Niell, J., dissenting.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by Thomas J. Burke against Philip Werlein and James Geary. Judgment for defendants, dismissing the suit after a trial on the merits, and plaintiff appeals. Judgment reversed, and judgment rendered in favor of plaintiff and against defendants in solido.

Roger Meunier, of New Orleans, for appellant. Merrick, Gensler & Schwarz, of New Orleans, for appellee estate of Philip Werlein. P. M. Milner, of New Orleans, for appellee Geary.

Statement of the Case.

MONROE, C. J. This is a suit against an alleged property owner and a contractor em-

ployed by him for damages for personal injuries said to have been sustained by plaintiff by reason of the alleged negligence of the defendants. The suit was originally dismissed upon exceptions, but upon appeal to this court that ruling was reversed, and it was remanded. 130 La. 439, 58 South. 140. It has now come up on appeal from a judgment of dismissal, after a trial on the merits.

Werlein, the alleged property owner, for answer denied that he was the owner of the lots in front of which a certain excavation was made; admitted that he entered into a contract with Geary, his codefendant, whereby the latter was to erect buildings on the lots, but alleged that Geary was an independent contractor, who was to do his work under the supervision of an architect, who was also an independent contractor; that the contract did not contemplate any such excavation; and that the excavation in question, if made, was the work of the sewerage and water board, and was done without his knowledge or consent. He also pleaded contributory negligence on the part of plaintiff. The denial of responsibility on the ground that he was not the owner of the lots was, however, abandoned, and the defense relied on was, and is, that the excavation was the work of the sewerage and water board; that plaintiff was not so badly injured as he alleges; and that his injury was attributable to his own negligence. Geary pleaded the general denial.

It was shown on the trial that Werlein entered into a contract in his own name with Geary, whereby the latter agreed to erect buildings upon three lots on Bienville street standing in Werlein's name, two of which adjoin each other, with the third separated from them by a distance of perhaps 60 feet, the understanding being that the building on the separate lot was to be hurried to completion in advance of the others. (There appears to have been some little confusion at one time about the municipal numbers, but for convenience of reference we shall take 517 and 519 as the correct numbers of the two lots which adjoin each other.) On June 4, 1909, about 3:30 o'clock p. m., plaintiff, who was under 40 years of age, weighed 240 pounds, and was in full possession of his faculties, mental and physical, was walking with a friend on the banquette in front of lots 517 and 519, on the way to his office. The bricks of the banquette had been taken up, leaving a more or less uneven surface of earth, which was aggravated by the fact that there was an excavation in front of one of the lots, from which or from some other source loose earth had been removed and piled into something of a ridge upon the curb side of the banquette, thereby narrowing the passageway and leaving, between the ridge and the wall, in course of construction, no more room than was required for the two men to walk abreast of each other. The excavation was about 2½ feet from the wall, 3 or 4 feet deep, and was covered with planks, which had an appearance of stability, and, as they were immediately in the path of the plaintiff, who was walking on that side of the banquette, he assumed that they had been placed there to serve as a bridge, and stepped on one of them in order to get across the excavation. The plank, however, gave way under his weight, bending and, perhaps, partly breaking and tilting, so that his left leg went down into the excavation and was badly lacerated and scraped upon the inside from the knee up, while his right leg was held in position by the upturned edge of the plank, and, as his left foot did not reach the bottom of the excavation, he suffered other injuries which were painful, at the time and afterwards, and disabled him considerably for several months; in fact he was still complaining of them after the lapse of 2 years or more. He incurred an indebtedness of $175 to his physician, and spent over $28 for drugs and appliances.

Under the specifications of his contract,

Geary was required to do the inside plumbing; that is to say, he was to install all the plumbing work that was required inside of the buildings and bring the pipes (meaning sewerage and water pipes) to a point under the •banquette 2½ or 3 feet outside of the front wall, or foundation, where they were to be connected with pipes leading from the mains to be put in and connected by the sewerage and water board. The inside plumbing was sublet by Geary to the Southern Plumbing Company, of which Julius Loeffer was president and, perhaps, the whole company, and, when that work was completed, the excavation into which plaintiff was precipitated was covered, and probably is now covered, with a lid, or cap, bearing his name. Apart from that, the records of the sewerage and water board and the testimony of its employés are conclusive to the effect that its work in making connections was done at the point, 2½ feet from the wall, to which Loeffer had brought the pipes from the inside, and that the hole into which plaintiff's leg dropped was there at that time. In fact, as we understand the testimony, the board does not undertake to make its connections with premises until there is something with which to connect; hence the inside plumbing is always done first. During the trial Geary was examined as a witness upon three occasions. Upon the first, he said nothing as to the digging of the hole in question; upon the second, he was asked whether Loeffer's men had dug it, and he replied that he did not know; upon the third, the judge not being present, he testified that he knew that the hole had been dug by the sewerage and water board people, because he had been so informed, and he "saw the hole after it was dug." He did not, however, call Loeffer or any of his men. Two other witnesses, called for defendants, gave testimony to the effect that, at a time when the buildings 517 and 519 were not equipped with inside plumbing, and there was nothing for the sewerage and water board to connect with, its men came there and dug a ditch across the banquette, though the only place where a connection could have been made was at the single building 60 feet away. The sewerage and water board people positively deny that any such thing happened, and the records of the board corroborate their testimony, whilst that of the other witnesses is uncorroborated, and in the light of the other testimony and all the circumstances incredible.

## Opinion.

In ruling upon the exceptions of misjoinder of defendants and no cause of action, when this case was here on the previous occasion, we expressed the view that:

"One who causes an excavation to be made in a sidewalk, and covered with boards which invite a pedestrian to walk on them, but which break beneath his weight, precipitating him into the excavation and injuring him, and one who actually does the things mentioned, may be held liable, in solido, to the person injured." Burke v. Werlein et al., 130 La. 439, 58 South. 140.

We now find that the facts, which were then merely alleged, have been established by proof, and we have but little to add to the view thus expressed.

[1, 2] The authorities are practically unanimous to the effect that an excavation in a public sidewalk is intrinsically dangerous, and is a nuisance; that one who causes it to be made, equally with the one who makes it, owes the absolute duty to protect the public from injury that may result therefrom; and that the one who causes it to be made cannot escape liability for such injury by showing that the one who has made it was engaged so to do as an independent contractor.

"The general rule," says Judge Dillon, referring to the rule that the principle of respondeat superior does not * * * extend to cases of independent contracts, where the party for whom the work is done is not the immediate superior of those guilty of the wrongful acts and has no choice in the selection of workmen and no con-

trol over the manner of doing the work under the contracts, "is stated in the preceding section, but it is important to bear in mind that it does not apply where the contract directly requires the performance of a work intrinsically dangerous however skillfully performed. In such a case the party authorizing such a work is justly regarded as the author of the mischief resulting from it whether he does the work himself or lets it out by contract." Dill. Mun. Corp. (4th Ed.) vol. 2, § 1,029.

See, also, Elliott on Roads and Streets (3d Ed.) vol. 2, § 815; Anderson v. Fleming, 160 Ind. 597, 67 N. E. 443, 66 L. R. A. 119, and note; Cameron Mill & E. Co. v. Anderson, 98 Tex. 156, 81 S. W. 282, 1 L. R. A. (N. S.) 198; McCarrier v. Hollister, 15 S. D. 366, 89 N. W. 862, 91 Am. St. Rep. 695; Rock v. Am. Const. Co., 120 La. 831, 45 South. 741, 14 L. R. A. (N. S.) 653; McCormack v. Robin, 126 La. 594, 52 South. 779, 139 Am. St. Rep. 549; Allen v. Town of Minden, 127 La. 403, 53 South. 666.

"An agent is liable to third persons for his own torts in like manner as other persons; his liability being neither increased nor decreased by the fact of his agency." 2 C. J. verbo Agency, pp. 824, 826; Camp v. Church Wardens, 7 La. Ann. 321; Delaney v. Rochereau & Co., 34 La. Ann. 1128, 44 Am. Rep. 456; Englert v. N. O. R. & L. Co., 128 La. 485, 54 South. 963.

[3] The evidence is rather conclusive to the effect that the injuries sustained by plaintiff are not permanent; his physical suffering does not appear to have been continuous or of long duration at any one time, and his detention from his business was measured by days, rather than weeks, and is not shown to have occasioned any pecuniary loss. We, therefore, conclude that $750 will sufficiently compensate the injury and expense to which he has been subjected.

It is accordingly adjudged and decreed that the judgment appealed from be set aside, and that there now be judgment in favor of plaintiff and against the defendants, the succession of Philip Werlein, herein represented by Mrs. Elizabeth Werlein, natural tutrix, administering the same, and James Geary, in solido, in the sum of $750, with legal interest thereon from the date of this judgment, and all costs.

O'NIELL, J., dissents.