No. 4090

Second Circuit

(Second Division)

———

PEPPER v. SOUTHERN BELL TEL. & TEL. CO., INC., ET AL.

———

(November 18, 1931. Opinion and Decree.)
(December 9, 1931. Rehearing Refused.)
(January 4, 1932. Writs of Certiorari and Review Refused by Supreme Court.)

———

Melvin F. Johnson and Malcolm. W. Feist, of Shreveport, attorneys for plaintiff, appellee.

Foster, Hall, Barrett & Smith and Mabry & Carstarphen, of Shreveport, attorneys for defendants, appellants.

STEPHENS, J. The plaintiff sues for damages in the sum of $10,000, for injuries alleged to have been sustained as a result of his having fallen while walking on the sidewalk in the 700 block on Cane street, in the town of Bossier City, Louisiana.

It is alleged in the petition that the defendant the Town of Bossier granted a permit to the defendant Southern Bell Telephone & Telegraph Company, Inc., to construct a subway for the purpose of laying its conduits under its streets and sidewalks; that it was necessary in the execution of the work to dig a ditch along and through the dirt sidewalk in the 700 block on the north side of Cane street; that the ditch was filled in such a manner as to leave a prominent mound, or ridge, which sloped sharply on its sides to the level of the surrounding ground, thus forming a gross inequality between the top of the elevation and general level of the sidewalk.

It is further alleged that the top of the ridge was used by the pedestrian public, and was unsafe and dangerous for the purpose, and exposed those walking upon it to potential injury. It is alleged that on the day the accident occurred, snow and ice covered the ground, and that plaintiff was walking on top of the elevation or ridge, and that he slipped and fell, and as a result thereof, his right thigh bone was broken, his knee permanently stiffened, and his right leg shortened and permanently injured.

He places the responsibility for his injuries upon the Southern Bell Telephone & Telegraph Company, Inc., on the ground that it created a dangerous condition by reason of having failed to properly refill the ditch. The theory upon which he seeks to hold the town of Bossier City liable, is that it was negligent in permitting the dangerous condition of the sidewalk created by its co-defendant to exist.

Both defendants filed exceptions of vagueness and of no cause or right of action. The former were overruled and the latter referred to the merits, by the district judge.

The defendants, reserving their rights under the exceptions, answered denying the existence of the alleged dangerous condition, and in the alternative pleaded the contributory negligence of the plaintiff.

A trial resulted in a judgment in favor of the plaintiff and against both defendants, in solido, in the sum of $2,000. The defendants appealed.

The learned district judge found the facts in the case to be as follows:

"That under a permit from the town of Bossier City the telephone Company dug certain ditches through the streets and sidewalks of said town for the purpose of laying underground wires or cables, the work being performed under contract by G. M. Guest, contractor, and in the course of the work, probably in November, 1929, dug a ditch practically down the center of a dirt space on the north side of Cane Street, some two or three feet from the curb, which space is and had been for sometime previous, used by pedestrians as a sidewalk.

"That some three or more years before that time, when the street was paved, dirt from the street had been piled out on the north side so that a strip some six feet wide was built up from six to eight inches higher than the curb. This strip had been walked on and packed down, and was fairly level and a good place to walk before the ditch was dug and filled, and was ordinarily used by pedestrians travelling the north side of Cane street in the 700 block.

"That after the ditch was dug and refilled there was a strip of the walk near the center that was some eight to seventeen inches high at the crown and some twelve to fourteen inches across the top that was level and sloping at the sides, and pedestrians ordinarily walked along the top of this ridge. I may add that I have lately made a personal inspection of the walk where the accident was shown to have occurred, and there is still some evidence of this ridge now visible; higher in some places than in others.

"That the weather was cold on January 24, 1930, and a snow had covered the ground two or three days previous, and some snow was still on the ground, and that the snow was beaten out on the top of the ridge and the ground frozen.

"That on the morning of the accident the plaintiff was walking along the top of this ridge going in a westerly direction when overtaken by another pedestrian, a Mr. Roy, going in the same direction, and when spoken to by Roy, he stepped to the south side of the walk, which was sloped and his foot slipped from under him and towards the south or curb side, causing him to fall across the ridge in the walk, as a result of which he sustained a broken right thigh.

"That he was confined to the Charity Hospital for some five weeks, and had to remain in a plaster cast three weeks longer, and is still walking on crutches a year from the accident; that he suffered considerable pain and his right leg is 1½ inches shorter than the left, and the muscles of the right thigh are slightly atrophied; that with a proper built up shoe he will be able to discard crutches and probably cane.

"That the manner in which the ditch was refilled and left by the Telephone Company was negligent."

This statement of the district judge fairly and accurately reflects the facts as disclosed by the record and we agree with his findings therein as a whole, which includes the conclusion of law in the last paragraph.

The authorities uniformly hold that the question of the responsibility of a municipal corporation for a defective sidewalk depends upon the particular circumstances in a given case. We find the rule stated in McQuillin on Municipal Corporations as follows:

"The municipality need not keep sidewalks absolutely safe, and is not responsible for every defect thereon. The municipality must have been negligent in order to be liable for injuries thereon. What is a defect or obstruction in or on a sidewalk which will constitute negligence on the part of the municipality is governed by no fixed rule, but is to be determined by the facts of the particular case and surrounding circumstances, such as those noted above in connection with the discussion of particular defects in general. * * *"

"Finally, municipal negligence may be established by any defect which renders the sidewalk dangerous or unsafe for use by travelers exercising ordinary care for their own safety."

Municipalities are responsible for injuries caused by defective sidewalks, if they are of such a nature that danger therefrom may be reasonably anticipated.

"Holes, ruts, or depressions in the street or sidewalk may give rise to a cause of action for injuries caused thereby if they are of such a nature that danger therefrom might be reasonably anticipated. But slight holes or depressions which are not in the nature of traps, and from which danger could not reasonably be anticipated,

are not defects for which an action will lie." 43 Corpus Juris, 1014.

The ridge in question was of such a nature as to be safe in good weather, but unsafe and dangerous under the conditions which existed at the time of the accident. As the defendants knew of the possibility of the conditions occurring, which existed at the time of the accident, they are chargeable with the duty of anticipating the danger incident thereto. The defendants, we think, are liable on the theories advanced by plaintiff unless it be shown that plaintiff failed to observe ordinary care in choosing to walk upon the ridge under the existing conditions and surrounding circumstances.

The plaintiff lived within a block of where the accident occurred. He walked upon the ridge frequently for a considerable period of time before the accident, and therefore must have been perfectly familiar with the irregularities of its surface, its height and the abruptness of the slope of its sides. The accident occurred in broad daylight; he therefore could not have been unaware of the danger of walking on a frozen irregular surface on a narrow ridge. If, as we have stated, the defendants might have reasonably anticipated the dangerous condition of the ridge, which would be caused by the presence of snow and ice, clearly, the plaintiff, who was confronted with the actual condition in good light, must be charged with appreciation of the danger.

The accident occurred on the north side of Cane street. The street and the sidewalk on its south border are paved. On each side of the ridge there was a path or passageway used to some extent by pedestrians, and which at the time of the accident was covered with snow.

If the plaintiff realized the danger of walking on the ridge where the snow had been beaten down and ice had formed, and in our opinion he did realize the danger, it was his duty, in observing ordinary care, to use one of the passageways which existed on either side of the ridge, or to cross the street and walk upon the paved sidewalk.

"It is well settled that a traveler who knows, or, as an ordinarily cautious person, ought to know, that it is dangerous to pass over a defective driveway, cross walk or sidewalk, and does so, although he might have taken another safe and convenient path or course in the same direction, is guilty of such negligence as will defeat recovery for damages in event of injury, caused by the dangerous condition of the way. Thus, if the walk on the other side of the street is known to be in good condition, and it is not necessary to go upon the unsafe sidewalk, there can be no recovery." McQuillin on Municipal Corporations (2d Ed.) vol. 7, p. 281.

The paths suggested, each supplied plaintiff with a safe and convenient way leading in the same direction. It is true that it would have been slightly more difficult to walk in the loose snow on the paths suggested than on the frozen surface of beaten snow on the ridge; but this slight difference in the amount of effort required to walk should not have deterred plaintiff in the exercise of ordinary care from choosing a safe passageway, if confronted with a known dangerous one.

We must conclude that the plaintiff was guilty of contributory negligence in choosing an unsafe passageway when a safe and convenient passageway leading in the same direction was available. If he had used ordinary care he could have avoided the injury.

In Moore v. Mayor, etc., of City of Shreveport. 3 La. Ann. 645, in which recovery was sought for injury sustained by a fall in the street caused by an obstruction and the general bad condition of the street, it was held:

"The obstruction complained of was in the business part of town, and had been permitted to remain for some time. The plaintiff was a clerk in a store, and resided there; and with ordinary caution on his part, the injury would have been avoided."

The court denied recovery.

In the case of Whalon v. Sewerage & Water Board, 142 La. 735, 77 So. 520, the plaintiff sued for damages alleged to have been suffered by her falling upon a broken and uneven sidewalk. One of the defenses urged was that the plaintiff was aware of the unsafe condition of the sidewalk and could have avoided the danger with ordinary prudence. The Supreme Court in referring to this defense, used the following language:

"We have concluded that the latter defense is sufficient. The accident happened in front of the premises adjoining the plaintiff's residence. She admitted in her testimony that she was aware of the unsafe condition of the sidewalk, and had written a complaint to the superintendent of the sewerage and water board before the accident. Her testimony convinces us that, with ordinary care, she could have avoided the accident."

In the case of Barnes v. City of New Orleans, 4 La. App. 503, the plaintiff brought suit alleging that at 7:40 in the morning while walking along one side of Toulouse street, she suddenly fell into a large hole in the banquette which she had not observed, on account of the grass which covered it. We quote from the opinion in this case the following:

"Plaintiff says she could not see the broken pavement nor the hole in the ground on account of the grass and weeds growing over it three feet high. This court will take judicial cognizance of the fact that in April vegetation has not yet acquired that growth, as she had been walking upon the sidewalk, year in and year out, for several years prior to the accident she was sufficiently acquainted with its condition during all seasons. If that side of Toulouse Street was bad she could have taken the other side. When two roads, one with and the other without danger, are open to plaintiff, and she chooses the former and is hurt, she cannot recover damages."

This court held in the case of Nolan v. City of Shreveport, 7 La. App. 218, that plaintiff was barred from recovery because of contributory negligence in that she knew of the existence of the obstruction over which she stumbled and fell, and could have avoided the resulting injury if she had observed ordinary care.

The case relied on by plaintiff as "more similar to the case at bar than any other is" (quotation from plaintiff's brief), is Blume v. City of New Orleans, 104 La. 345, 29 So. 106. In that case the injury was caused by plaintiff stumbling against an abrupt elevation of five inches in the sidewalk. The plaintiff was permitted to recover.

In our opinion, the cited case bears but slight similarity to the present one. The accident in the cited case occurred at night. The place of the accident was unlighted, either by the moon or artificial light. The elevation was across the path of travel and the plaintiff was not shown to have known of its existence. The court in commenting on the case said:

"As relates to the accident itself, the facts are that, on the night plaintiff fell

262

'there was no moonlight; it was dark at the place of the accident, that is on the dividing line between the Wood banquette and Rhoel banquette. The banquette on the Rhoel property was raised, in 1895, five inches higher than the banquette on the Wood property. Between the properties the rise was abrupt. There was no incline at all."

The other cases cited by plaintiff are distinguished from the instant case, in that the accidents occurred at night under conditions, the knowledge of the danger of which were not chargeable to the persons injured, because they could not see them, or the accidents resulted from dangerous defects not easily discernible in the daytime by observing ordinary care. To the former class of cases must be assigned Lemoine v. City of Alexandria, 151 La. 562, 92 So. 58, and McCormack v. Robin, 126 La. 594, 52 So. 779, 139 Am. St. Rep. 549; and to the latter class, those commonly spoken of as trap cases, Rock v. American Construction Co., 120 La. 831, 45 So. 741, 14 L. R. A. (N. S.) 653; Burke v. Werlein et al., 143 La. 788, 79 So. 405; O'Neill v. City of New Orleans, 30 La. Ann. 220, 31 Am. Rep. 221; Robertson v. Town of Jennings, 128 La. 795, 55 So. 375.

In the case of Buechner v. City of New Orleans, 112 La. 599, 36 So. 603, 66 L. R. A. 334, 104 Am. St. Rep. 455, cited by plaintiff, contributory negligence was not pleaded as a defense. It can therefore have no application here.

We are of the opinion that the lower court was in error in holding the plaintiff not guilty of contributory negligence.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be annulled, avoided, and reversed, and that there now be judgment rejecting plaintiff's demands, with costs.