## LANDRY v. NEW ORLEANS PUBLIC SERVICE, Inc., et al.

### No. 13790.

Court of Appeal of Louisiana. Orleans.
June 29, 1933.

Eraste Vidrine, Chas. I. Denechaud, Claude L. Johnson, and Jas. G. Schillin, all of New Orleans, for plaintiff.

Ivy G. Kittredge, of New Orleans, for defendant New Orleans Public Service, Inc.

Nat W. Bond, City Atty., and Henry B. Curtis and Chas. A. O'Niell, Jr., Asst. City Attys., all of New Orleans, for defendant City.

HIGGINS, Judge.

This is a suit by a father in behalf of his minor daughter to recover damages for personal injuries and disfigurement sustained by her when the automobile in which she was riding as a guest ran into the base of a broken iron light post imbedded in or near the public road adjacent to the Southern Yacht Club. He seeks to hold the defendants liable in solido; the city of New Orleans on the theory that it failed to remove the obstruction from the street after due notice of its presence, and the New Orleans Public Service, Inc., on the ground that it was the owner of the broken lamp post and permitted it to remain in that condition, after its officers were apprised of that fact.

The city of New Orleans filed a general denial, and the New Orleans Public Service, Inc., denied that it was the owner of the broken lamp post, or had any control over it, and averred that the post was the property of the city.

There was judgment in favor of the plaintiff against the city of New Orleans for the sum of $4,000 and rejecting the claim against the New Orleans Public Service, Inc. The plaintiff and the city have appealed.

When the case was originally submitted to this court, we dismissed the plaintiff's suit on the ground that he had released the owner and the driver of the car from liability in a written settlement for the sum of $2,500, which was paid by the insurance carrier, and had failed to properly reserve his rights against the other tort-feasors, thereby releasing them also. 142 So. 213.

The Supreme Court granted a writ of certiorari and reversed the judgment of this court, holding that the plaintiff, in the release, had reserved his rights to institute suit against the other named tort-feasors, and that the $2,500 paid by the insurance carrier should be credited against any amount that might be awarded by the court on the merits, in the event that we reached the conclusion that Joseph Gumbel, the driver of the car, was a joint tort-feasor, and remanding the case to this court for further proceedings on the merits in accordance with the views therein expressed. 177 La. 105, 147 So. 698.

The record shows that Beatrice Landry is a young lady 19 years old and the daughter of Henry I. Landry, plaintiff in the case; that on April 21, 1927, about 9 o'clock p. m., after attending a social function at the Southern Yacht Club at West End with Mr. Joseph Gumbel, they came out of the clubhouse and entered a Lincoln sedan, which was owned by Mr. Gumbel's sister and driven by himself; that the car had been parked close to the clubhouse on the club grounds on the lake side on what is known as the Yacht Club Spur, with its front pointing toward the bulkhead on the shores of Lake Pontchartrain; that there were a number of other cars parked on a 45-degree angle to the left of the Lincoln sedan; that the night was dark and windy, causing the waves in the lake to break against the bulkhead and spray water over the same; that due to this circumstance the drivers who parked their cars at that place stopped them about 3 feet from the bulkhead; that to the left of the point where these cars were parked was a series of electric lights mounted on iron posts, forming what was known as the White Way; that the one nearest the clubhouse had been broken off near its base, about 18 inches of it protruding above the ground; that the road is covered with white shells and, at the point where the broken post is located, is the edge of what was formerly a neutral ground, on which there was grass; that the curbing of the neutral ground, however, had been obliterated by automobiles passing over it and the shells were strewn around the broken light post; that the shell road between the broken light standard and the bulkhead measured 25 feet; that be-

tween the rear of the parked automobiles and this broken standard was a space of about 6 feet; that, after getting into the Lincoln car, Mr. Gumbel backed out, turned to his left, and then drove forward, or toward the city in the rear of the parked automobiles; that, after going about 150 feet and while traveling at a speed of about 8 or 10 miles an hour, the left side of the front axle struck the broken light post, causing the car to come to a violent stop, which catapulted Miss Landry into the windshield, which broke, and severely cut her face; that she was taken back to the clubhouse, where first aid was administered, and then to the Charity Hospital, where she was given medical attention.

The New Orleans Public Service, Inc., through documentary evidence and the testimony of several witnesses, clearly established the fact that it had installed the lighting system at West End for the city of New Orleans, that the post in question belonged to the city, and that the company was under no obligation to maintain the system, or repair the damaged post and had no control whatsoever thereof at the time of the accident. The judgment in favor of the New Orleans Public Service, Inc., is therefore correct.

From what we have just said, it is clear that the great preponderance of the evidence shows that the broken light post in question was the property of the city of New Orleans, and that it was obligated to maintain and repair the lighting system, including the broken post. The evidence also convinces us that the officials of the city of New Orleans, and particularly the city electrician, had been notified of this obstruction in the road, and that it was a hazard to automobile traffic, but that they had failed to repair the post, remove it, or cause a light to be placed thereon so as to warn motorists of its presence. The representatives of the city were therefore guilty of negligence which renders it liable. McQuillan on Municipal Corporations (2d Ed.) § 3013; Corpus Juris, vol. 43, § 1772; Burke v. Werlein, 143 La. 788, 79 So. 405; Smith v. Baton Rouge, 166 La. 472, 117 So. 559.

The Supreme Court, in remanding the case, directed us to determine whether Joseph Gumbel was a joint tort-feasor, in order to say whether or not credit for the $2,500 that had been paid by the insurance carrier should be given on account of any judgment that might be rendered in plaintiff's favor. Mr. Gumbel admits that he was familiar with the locus in quo and knew that a portion of the broken light post was in the vicinity of the accident. His only excuse for not having seen the obstruction was that there were people walking along the road in the rear of the parked automobiles going in the direction of the clubhouse, and that his attention was focused upon them so as not to injure any of them. However, both he and Miss Landry admit that the illumination from the headlights of the Lincoln car was sufficient to have revealed the presence of the broken post in the path of the automobile, and that, if they had looked in that direction, they would have seen it. The automobile was being driven at an exceptionally slow rate of speed, and we are satisfied that, if Mr. Gumbel had been keeping a proper lookout while traveling a distance of approximately 150 feet before he struck the post, he would have seen it and would have avoided it. Therefore we find that he was guilty of negligence which proximately contributed to the accident.

As to the quantum, it appears that Miss Landry was a pretty, unmarried girl, age 19 years; that she sustained a severe cut on the right cheek of her face, leaving a disfiguring scar approximately 2¾ inches long, a similar cut and scar on the left cheek of her face approximately 1¾ inches in length, a cut and scar running parallel with the lower lip, midway between the lip and the chin, and also a cut and scar about half an inch long, running down from the left edge of her lower lip. She bled profusely, suffered considerable nervous shock, and the wounds necessitated thirty sutures, requiring an hour and forty-five minutes to place them. The only anæsthetic employed was a hypodermic injection. The pain was excruciating, and the scars are permanent. She had been working as a stenographer for a salary of $15 per week, and testified that she was unable to work for several months. The trial judge allowed the sum of $4,000, covering disfigurement, pain and suffering, medical expenses, and loss of wages.

In the case of Dyess v. Landry, 15 La. App. 403, 132 So. 242, we awarded a young, unmarried woman the sum of $3,625 on a similar claim. However, we believe that plaintiff in this case has sustained more severe injuries and greater disfigurement than the plaintiff in that case. We have reached the conclusion that the sum of $4,000 awarded is neither excessive nor inadequate, but fair and in keeping with awards in similar cases.

Having found that Mr. Gumbel was negligent and therefore a joint tort-feasor, under the instructions of the Supreme Court we are crediting the $2,500 previously paid to Mr. Landry, leaving a balance of $1,500, for which amount judgment will be rendered.

For the reasons assigned, it is ordered, adjudged, and decreed that the judgment appealed from be amended by reducing it from the sum of $4,000 to the sum of $1,500, with legal interest from judicial demand until paid. In all other respects the judgment is affirmed.

Amended and affirmed.