This appeal is prosecuted by plaintiff, Miss Myrtle Waggoner, from a judgment of the district court that sustained exceptions of no cause and no right of action directed to her original and supplemental petitions by defendants, the City of Minden, Louisiana, and the Maryland Casualty Company.
The suit has for its purpose the recovery of damages for injuries allegedly experienced by plaintiff when she stepped into a water meter box owned and maintained by the City of Minden.
In passing upon the mentioned exceptions, all of the petitions' well-pleaded allegations of fact must be taken and accepted as true. These disclose the existence of the following factual situation.
The City of Minden owns, and it operates at a profit, a light and water plant that serves not only the citizens of that municipality but also other persons residing outside the corporate limits. Incidental to such operation is a water meter, covered by a metal box with detachable top, which it maintains on the neutral strip of ground between the sidewalk and curb of South Broadway Street in Minden in front of the property of Mrs. W.B. Wiley. Adjoining that property, and a few feet from the meter box, is the new bus station of the Tri-State Transit Company.
The meter box top "rested on a narrow shoulder on the inside of the meter box, about one-half inch in width, the edges of the top being beveled and smooth, and that when dirt and foreign matter collected on the shoulder it caused said top to rest unevenly on said shoulder and subjected it to tilting and slipping upon the slightest provocation." Grass had grown around the top and dirt and foreign matter had collected on said shoulder, causing said top to become extremely unsafe and insecure. To "the careful observer looking at it in the position it was in on the day of the accident — which was its normal position — it would appear to be stable and safe, since the said top was constructed of an iron casting and otherwise had the appearance of stability and safety." Its described unsafe condition was known by the officers, agents and employees of the water department of the City of Minden.
Plaintiff, who resides in Shreveport, attended the formal opening of the new bus station in Minden on September 30, 1939. About 6 o'clock of the afternoon of that date she, together with some friends, departed from that building and proceeded across the sidewalk and neutral strip with the view of entering an automobile parked in the street. She was "in the act of stepping in the car when she stepped on the metal top of the water meter and meter box above described, and that, immediately upon stepping upon same, that the top of the meter box turned and slipped and that your petitioner's left leg went into the hole up to her knee", causing the injuries complained of.
The aforesaid allegations of fact of the petition, it seems to us, picture a veritable and dangerous trap, maintained by the City of Minden with its knowledge, that was *Page 246 
located in close proximity to the much patronized bus station and which claimed plaintiff as its victim. Of course, the question of whether or not those allegations can be substantiated by competent proof is one with which we are not now concerned, the case being presently before us only on the exceptions mentioned.
There appear to be no cases in our jurisprudence involving a similar factual situation. Appellate courts in other states, however, have considered it.
In Butler v. McMinnville, 126 Or. 56, 268 P. 760, 762, 59 A.L.R. 381, decided by the Supreme Court of Oregon sitting en banc, it was held that a municipal corporation was negligent in covering an open water meter box, placed by it in a neutral strip, with rotten sticks or boards, since an ordinarily prudent person would not expect that a water box would be left in such a condition on the park strip. The court, in its opinion, commented: "There was no statute or ordinance forbidding pedestrians to cross parking strips. She was not a trespasser, but was at a place where she had a strict legal right to be. It is true that a park strip was not designated for the use of pedestrians, but can it be said, as a matter of law, that it would be unreasonable on the part of the city to anticipate that pedestrians would occasionally cross it? Civic pride usually restrains people from crossing beautiful lawns and flower beds, but when, as in the instant case, park strips are not so beautified, it is not unusual for persons of ordinary caution and prudence to cross them in order to save time and distance. Of course, a higher degree of care must be exercised in walking over a strip on which there are usually obstructions. It will not do to travel in the same manner as if one were on smooth pavement or concrete walk. Care commensurate with the danger involved is a fundamental rule. * * * It is not expected — nor does the law require — that a city shall maintain a park strip in the same condition for travel as it would a paved street or sidewalk. There are certain obstructions incidental to its use, such as electric light poles and signboards, which may rightfully be placed in a portion of the street set aside and devoted to purposes of ornamentation. He who sees fit to cross a park strip must reasonably anticipate that his way may be thus obstructed. However, in the absence of notice to the contrary, an ordinarily prudent person would not anticipate that a water meter box would be left without a cover or lid thereon. A city has no right to maintain anything in the nature of a pitfall, trap, snare, or like obstruction, whereby the traveler, yielding to the impulse of the average person to cut across a corner in a hurry, may be injured, nor will it be permitted to allow others to do so."
The last part of the quoted comment is to be found in the case of McDonald v. St. Paul, 82 Minn. 308, 84 N.W. 1022, 83 Am.St.Rep. 428; and it is very similar to the following extract from 43 Corpus Juris verbo Municipal Corporations, Section 1793 page 1014: "While a municipality may maintain grass plots or tree spaces between the sidewalk and curb and protect them by suitable barriers, without incurring liability for injuries, it has no right to maintain a dangerous pitfall or trap in such space, and will be liable for injuries where it stretches a small wire along the edge of the plot in such a way as to constitute a menace to travelers."
These expressions are based on the general rule, sustained by the great weight of authority in this country and which we believe to be sound, that is stated in 59 A.L.R. page 389, as follows: "While the municipality is not required to keep all the space along the sidewalk in the same condition for use as the sidewalk proper, it is under the duty to take cognizance of the fact that pedestrians sometimes walk over a park space, and must exercise due care to have such area in a reasonably safe condition."
A more elaborate statement of such rule is given in 25 American Jurisprudence verbo Highways, Section 407, reading: "The fact that a space between the sidewalk and the curbing of a street is set aside and maintained as a park strip does not necessarily withdraw it entirely from use by pedestrians. The public authorities may, of course, prevent any use thereof by travelers, or limit or restrict such use, but in the absence of any such action, pedestrians have a right to go upon or cross over such space, subject to the uses theretofore properly fixed thereon by the municipal authorities, and to the inconveniences and risks due to the presence of obvious obstructions which are incidental to its use as a park strip. The extent to which such a strip is subject to use by travelers varies, therefore, with circumstances and conditions. But to the extent *Page 247 
to which it is left open for such use, the duty rests upon the municipality to use ordinary care to maintain it in a reasonably safe condition, on pain of liability for injuries resulting from a default in this respect."
Counsel for defendants, in support of the exceptions, rely largely on Aucoin v. City of Baton Rouge, La.App., 171 So. 412, 414. In that case, decided by the Court of Appeal of the First Circuit, plaintiff claimed damages for injuries resulting when she stepped into a hole located in a neutral strip. Her suit was dismissed only after a trial of the merits and on appeal. The court therein observed:
"But regardless of the question of knowledge or notice, we are of the opinion that plaintiff must fail in her demand because the municipality owed her no particular duty in respect to this portion of the street called a `neutral ground.'
* * * * *
"When the plaintiff left her place of safety on the sidewalk to go on to the neutral ground for her own convenience, as she admits, she assumed the responsibility and the risk incidental to her act in doing so. The city had discharged its duty toward her, as a pedestrian on the street, when it had provided her with a safe sidewalk on which to tread."
It appears to us that the quoted broad statements were unnecessary for a decision in the case. The hole involved was evidently a large one, for according to the evidence it served for drainage purposes, and it could and should have been noticed by plaintiff if she had been employing the required care and caution. But be that as it may, we cannot agree that a pedestrian who uses due care and walks into a hidden trap that is maintained by the city on an unposted and unguarded neutral strip, such as plaintiff's petitions describe, must assume responsibility for the consequences.
Let us assume, for the sake of argument, that a municipality sets a steel trap in a neutral strip for the purpose of catching rodents destructive to trees, covering it with leaves to prevent its being detected, and fails to erect a protecting barrier. Certainly a person who is unaware of its existence and becomes ensnared thereby would have a cause of action against the municipality with respect to all injuries sustained.
The allegations of plaintiff's petitions show that the meter box, with its apparently stable but actually unstable cover, was in reality a trap. Of course, it was not purposely or deliberately maintained as such, but it did, according to the pleadings, exist with the knowledge of the City of Minden.
Counsel for defendants also cite Pepper v. Southern Bell Telephone Telegraph Company, 18 La.App. 257, 137 So. 610 and Glatstein v. City of Shreveport, La.App., 149 So. 158. In each of those authorities, which we find inapplicable, the dangerousness of the offending object was apparent and it could have been avoided by the injured person if he had been observant. Here there was nothing to warn plaintiff of the lurking dangers of the meter box.
It is the law that where a plaintiff alleges facts which affirmatively show that he has been guilty of contributory negligence, the defendant may raise the issue by exceptions of no cause and no right of action. Louisiana Power Light Company v. Saia et al., 188 La. 358, 177 So. 238; Pittman v. Gifford-Hill 
Company, Inc., et al., La.App., 188 So. 470. But where there is no such affirmative showing the exceptions should not be maintained. Gibbs v. Illinois Central Railroad Company,169 La. 450, 125 So. 445; Pittman v. Gifford-Hill Company, supra. The factual allegations of plaintiff's petitions, in the instant controversy, do not affirmatively disclose contributory negligence or a lack of care on the part of plaintiff.
This cause, to say the least, should certainly be considered in the light of the established doctrine that doubts as to the rights of a plaintiff to recover should be resolved in favor of the sufficiency of the petition where it does not clearly disclose lack of right or cause of action. Patterson v. Chicago, R.I. P.R. Railroad Company, La.App., 175 So. 164; Pittman v. Gifford-Hill Company, supra; Gunn v. Saenger-Ehrlich Enterprises, Inc., et al., La.App., 192 So. 744. Regarding our decision herein, however, it may be said that by it we are not prejudging to any extent the merits of the case.
For the reasons assigned, the judgment of the district court is reversed and set aside, the exceptions of no right and no cause of action are overruled, and the case is remanded for trial on its merits and according to law. All costs shall abide the final determination of the case.
DREW and TALIAFERRO, JJ., concur. *Page 248